# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

JASON ARTHUR ALTHEIDE,

Plaintiff,

v.

THOMAS KLENCZAR, *et al.*,

Defendants.

Case No. 2:16-cv-02272-RFB-NJK

**ORDER**

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 103) and Plaintiff's Motion for Default and Cross Motion for Summary Judgment (ECF No. 115). Following screening of the First Amended Complaint, the following claims proceeded against Defendants: Deliberate Indifference against Mike Gray, Dave Boruchowitz, and Sharon Wehrly (Count II); Deprivation of Property against Gray, Harry Means, and Boruchowitz (Count V); Procedural Due Process against Means, Boruchowitz, Gray, and Wehrly (Count VII); Deliberate Indifference against Boruchowitz, Gray, and Wehrly (Count VIII); Excessive Force against Joshua Bissell (Count VIII); and Procedural Due Process against Boruchowitz and Wehrly (Count IX). ECF Nos. 11, 35.

For the reasons stated below, the Court grants in part and denies in part Defendants' motion and denies Plaintiff's motion.

## II. FACTUAL BACKGROUND

### a. Undisputed Facts

The Court finds the following facts to be undisputed.

i. Pretrial Detention Dates

Plaintiff was detained at Nye County Detention Center ("NCDC") multiple times during the summer of 2014. Plaintiff was arrested on June 29, 2014 and released on August 2, 2014. Plaintiff was arrested again on September 16, 2014 and released on September 17, 2014. On September 20, 2014, Plaintiff was arrested again and remained in custody until December 14, 2016. Plaintiff was a pretrial detainee throughout each of these periods of custody.

ii. Facts Relevant to Count II

At the time of Plaintiff's first arrest in June 2014, Plaintiff had psychiatric medications prescribed to him. Plaintiff did not receive his prescribed psychiatric medication when in custody from June 2014 to February 2015. In early February 2015, Plaintiff was evaluated at the Lake's Crossing medical facility. This evaluation was the first psychiatric attention Plaintiff received while detained at NCDC. Following the February 2015 evaluation, Plaintiff began receiving psychiatric treatment and was administered psychiatric medications.

iii. Facts Relevant to Count V

In late October 2015, NCDC switched to a new canteen provider, which assessed sales tax on uncooked food. Plaintiff notified Boruchowitz, Means, and Gray that the new canteen provider was fraudulently collecting sales taxes. Plaintiff filed a complaint through the jail's formal grievance process. Boruchowitz responded that these sales taxes were required.

On July 5, 2016, Boruchowitz told Plaintiff that the assessment of the sales taxes, although not fraudulent, was mistakenly assessed and that the sales tax assessment had been reversed. Plaintiff received $6 back but filed a grievance on July 29, 2016 for remaining funds mistakenly assessed pursuant to the improper sales tax.

iv. Facts Relevant to Count VII

On either December 13 or December 23, 2015, Plaintiff was involved in an incident where Plaintiff was eventually tasered by Defendant Means, handcuffed, and escorted to his cell.

On January 3, 2016, Means gave Plaintiff written notice of a 135-day disciplinary sentence in relation to this incident. Plaintiff immediately appealed and Means denied the appeal the next

///

day. In providing the notice on January 3, 2016, Means failed to comply with NCDC policy that requires written notice of charges within a 96-hour time frame.

Upon conducting a hearing on May 27, 2017, prison staff concluded that Means improperly served the discipline and Plaintiff's remaining time in disciplinary was voided. Plaintiff spent a total of 144 days in disciplinary segregation (January 4, 2016 – May 27, 2016) without a hearing before being released.

### v. Facts Relevant to Count VIII

On either August 20 or August 22, 2016, Plaintiff's psychiatric medications ran out.

On August 24, 2016, Plaintiff was involved in an incident in which Plaintiff was ultimately forced to the ground by Bissell and two other deputies. Plaintiff had been off his medication for at least two days at the time of this incident.

Plaintiff's prescription was refilled on August 25, 2016.

### vi. Facts Relevant to Count IX

On September 3, 2016, a raid took place in which contraband including medication was found on two inmates, who upon questioning said that the medication was from Plaintiff.

On September 8, 2016, Plaintiff received notice of disciplinary action related to this medication found on the other inmates. Plaintiff was sentenced to 30 days of disciplinary segregation. Defendants failed to comply with NCDC policy that requires written notice of charges within a 96-hour time frame. Plaintiff did not receive a hearing.

**b. Disputed Facts**

### i. Facts Relevant to Count II

Plaintiff alleges that he informed NCDC personnel that he was taking psychiatric medications at the time of his initial arrest, and that he told several people at NCDC that he required psychiatric treatment.

Defendants allege that Plaintiff only submitted two medical request forms: one for pain in December 2014, which was addressed at that time, and another for prescription verification on January 12, 2015, which led (two weeks later) to a verification of his prescriptions with San

///

Joaquin County Behavioral Health: Berphenazine and Seroquel. These medications were thereafter promptly provided.

### ii. Facts Relevant to Count V

Plaintiff alleges that he is still owed mischarged sales tax in an amount somewhere between $31 and $38.

Defendants allege that Plaintiff was provided a full refund and argue that, in any event, because the canteen provider has advised Means that it had returned all monies that were due, any further action would have to be a civil matter between Plaintiff and the canteen provider.

### iii. Facts Relevant to Count VII

The Court finds no factual dispute as to Count VII.

### iv. Facts Relevant to Count VIII

The parties have different characterizations of the circumstances and the force deployed by Defendant Bissell during the incident on August 24, 2016.

According to Defendants, on August 24, 2016, Plaintiff declined to comply with a lockdown order and complained about his medication to non-party Wesley Taylor, who told Plaintiff that non-party Gregory Arms was handling his medication issue. Taylor called for additional deputies to force Plaintiff to lockdown. Four deputies, including Bissel, arrived. Plaintiff was sitting at a jail kiosk and repeatedly declined to comply with orders to lockdown. Bissell then grabbed Plaintiff by the right arm. Plaintiff pulled away, shouted, and tried to grab Bissell. Deputies forced Plaintiff to the ground. On his way to the ground, Plaintiff landed on Bissell's left elbow and scratched Bissell's nose. Plaintiff was then restrained and escorted to his cell.

According to Plaintiff, Plaintiff had been awake for four straight days due to the deprivation of his medication and was sitting down talking to NDCD staff, asking to go outside, when he was attacked by Bissell and two others from behind unprovoked. Plaintiff alleges that there exists video evidence of this attack but that the evidence is being withheld.

The parties also dispute whether deliberate indifference motivated the three-to-five days Plaintiff spent without his medication in August 2016. According to Defendants, Plaintiff's

medical provider cancelled Plaintiff's appointment scheduled for August 20, 2016, where Plaintiff would have received a refill of his medication. According to Plaintiff, Boruchowitz, Gray, and Wehrly denied Plaintiff his psychiatric medication in an intentional attempt to force him to detox and to destabilize him.

v. <u>Facts Relevant to Count IX</u>

The Court finds no factual dispute as to Count IX.

**III. PROCEDURAL BACKGROUND**

Plaintiff filed the Complaint and application to proceed *in forma pauperis* on September 27, 2016. ECF No. 1. On October 17, 2016, Plaintiff was granted leave to amend. ECF No. 10. Plaintiff filed the First Amended Complaint on October 19, 2016. ECF No. 11.

The Court screened the First Amended Complaint on December 18, 2017. ECF No. 35. The Court dismissed certain claims but retained the claims listed above. The Court denied Plaintiff's motions for appointment of counsel. The Court gave Plaintiff leave to file a second amended complaint to cure certain deficiencies, but Plaintiff did not do so.

Bissell, Gray, Means, and Wehrly filed an Answer on March 29, 2018. ECF No. 49. A clerk's default was entered against Boruchowitz on April 9, 2018 and then set aside on April 24, 2018. ECF Nos. 52, 57. Boruchowitz filed on Answer on April 26, 2018. ECF No. 59.

Bissell, Gray, Means, and Wehrly filed their instant Motion for Summary Judgment on October 31, 2018. ECF No. 104. Boruchowitz joined the Motion for Summary Judgment on November 2, 2018. ECF No. 112. Plaintiff responded on November 13, 2018. ECF No. 114. Bissell, Gray, Means, and Wehrly replied on November 27, 2018. ECF No. 117. Defendant Boruchowitz joined the reply on November 28, 2018. ECF No. 119.

Plaintiff filed his instant Motion for Default and Cross-Motion for Summary Judgment on November 15, 2018. ECF No. 115. Bissell, Gray, Means, and Wehrly responded on November 28, 2018. ECF No. 118. Boruchowitz joined the response on November 28, 2018. ECF No. 120.

The Court held a hearing on the pending motions on July 18, 2019 and determined that a written order would issue. ECF No. 129. The Court reconsidered its earlier order denying

Plaintiff's motions for appointment of counsel and referred Plaintiff to the Court's pro bono pilot program. Id.

## IV. LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted) (alteration in original).

### b. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014).

In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks

omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 131 S. Ct. 2074, 2083 (2011). Further, the right must be defined at "the appropriate level of generality ... [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al–Kidd, 131 S. Ct. at 2084. The plaintiff bears the burden of proving that the right was clearly established. Id. at 1125. In deciding a claim of qualified immunity where a genuine dispute of material fact exists, the court accepts the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010).

### c. Default Judgment

The granting of a default judgment is a two-step process directed by Federal Rule of Civil Procedure 55. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of clerk's default based on a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step is default judgment under Rule 55(b), a decision which lies within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471–72.

### A. DISCUSSION
#### a. Defendants' Motion for Summary Judgment

vi. Count II

Pretrial detainees may raise inadequate medical care claims under the Fourteenth Amendment's Due Process Clause. Gordon v. Cty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018). The Court evaluates these claims under an objective deliberate indifference standard. Id. at 1125. The elements of a pretrial detainee's Fourteenth Amendment inadequate medical care claim are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. The third element requires the defendant's conduct to be "objectively unreasonable," a test that turns on the facts and circumstances of each particular case. Id. A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id.

Pursuant to the qualified immunity standard, the Court evaluates (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Here, the Court finds that the facts do not show that Defendants' conduct violated a constitutional right.

Defendants argue that Plaintiff cannot prove that each Defendant made an intentional decision to deny Plaintiff psychiatric care, as Plaintiff has no evidence that Wehrly, Boruchowitz, or Gray knew of his psychiatric needs. The Court agrees. Prison logs indicate that on November 17, 2014, Plaintiff's criminal proceedings were suspended due to an order for a mental competency exam at Lakes Crossing. ECF No. 104, Exhibit A at 11. But Plaintiff proffers no evidence that Defendants knew of his psychiatric illness or his prescription for medication. The first evidence of Plaintiff communicating his need for medication to prison staff is a kite dated January 12, 2015. ECF No. 109, Exhibit B at 1032. Plaintiff does not dispute that Defendants then verified his prescription within two weeks and that he received necessary medical attention in February. Because Plaintiff has no evidence that any Defendants knew he needed care prior to the submission

of his January 2015 kite, he cannot show that any Defendant made an intentional decision to deny Plaintiff psychiatric care from June 2014 onward. Plaintiff does not contest that within a few weeks of the submission of his kite, prison staff arranged for the verification of his prescription and began providing his psychiatric medication as prescribed. Therefore, the Court grants summary judgment as to Count II for deliberate indifference in favor of Gray, Boruchowitz, and Wehrly.

### vii. Count V

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982).

As above, the Court evaluates (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. As to this claim, the Court finds that no clearly established law places the constitutional question beyond debate.

Defendants argue that they cannot be liable for the alleged deprivation of property because the third-party vendor assessed the sales tax, not the named Defendants. The Court agrees that a reasonable officer would not be on fair notice of any potential liability in this situation. While Plaintiff can show that Plaintiff interacted with Boruchowitz, Wehrly, and Gray regarding Plaintiff's complaints as to the vendor's withholding of taxes, Plaintiff cannot show that the deprivation of property was committed *by* any of the Defendants. See ECF No. 107, Exhibit B at 677, 910. No clearly established law indicates that a prison official can be held liable for knowledge of intentional deprivation of property by a third-party vendor. Moreover, the language of 42 U.S.C. § 1983 itself states that a person is liable if he "subjects, or causes to be subjected" a person to the deprivation of a constitutional right. Viewing the facts in the light most favorable to Plaintiff, Plaintiff only can show that Defendants knew about the vendor's practice of charging the

taxes and, for a period of time, erroneously believed the practice to be correct. Plaintiff cannot show that Defendants either subjected him to a deprivation of his tax money or caused him to be subjected to a deprivation of his tax money or that he did not have an adequate post-deprivation remedy. The Court finds that the Plaintiff has not shown a constitutional violation of clearly established law. Therefore, the Court grants summary judgment as to Count V for a due process deprivation of property claim in favor of Gray, Boruchowitz, and Means.

### viii. Count VII

The Fourteenth Amendment's Due Process Clause prohibits jail and prison officials from "punishing" a pretrial detainee without a due process hearing. Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996). "[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." Id.

The Court finds (1) that the undisputed facts show that Defendants' conduct violated Plaintiff's right to a due process hearing and (2) that the right to a due process hearing prior to disciplinary segregation is clearly established by Mitchell, such that Defendants could not reasonably have believed that denying Plaintiff a hearing could conform to established law. The Court finds it undisputed that Plaintiff was held in disciplinary segregation for 144 days without a hearing.

Defendants argue that, even though Means failed to comply with jail rules by submitting his written notice of the charges within the 96-hour time frame, his January 3, 2016 notice of the pending charges satisfied the constitutional requirement that a pretrial detainee be provide written notice of the charges against him, along with an opportunity to address the charges. Ultimately, Boruchowitz conducted a disciplinary hearing and Plaintiff's remaining time in disciplinary was voided. But Defendants do not contest that Plaintiff spent 144 days—almost five months—in disciplinary segregation without a hearing.

It is clearly established that Plaintiff has a right to a due process hearing prior to the imposition of disciplinary segregation. Defendants concede that Plaintiff did not receive one. The Court consequently denies qualified immunity on this claim as Defendants placement of Plaintiff

///

in disciplinary segregation for 144 days violated clearly established law. The Court denies summary judgment as to Count VII.

### ix. Count VIII (Deliberate Indifference)

As above, pretrial detainees may show inadequate medical care under the Fourteenth Amendment's Due Process Clause by proving five elements, the first of which is that the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined. Gordon, 888 F.3d at 1124–25. Defendants argue that they did not make an intentional decision regarding Plaintiff's medications; rather, Plaintiff's medical provider, Open Arms, cancelled Plaintiff's August 20, 2016 appointment and it therefore took a few days to get Plaintiff's prescription refilled.

Pursuant to the qualified immunity standard, the Court evaluates (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. The Court finds that the facts do not show violation of a constitutional right, as Plaintiff cannot demonstrate that any Defendant possessed the requisite intent to withholding his medication. The record shows that on August 20, 2016, Plaintiff asked if he would be seen at Open Arms that day and was concerned that he would run out of medication "very shortly." ECF No. 104, Exhibit B at 156. Plaintiff's medication was refilled on August 25, 2016. ECF No. 104, Exhibit B at 158. Plaintiff appears to have been out of medication for up to five days. Plaintiff lacks evidence, however, that Defendants made an intentional decision to discontinue his medication for that five-day period. Therefore, the Court grants summary judgment as to Count VIII for deliberate indifference in favor of Boruchowitz, Gray, and Wehrly.

### x. Count VIII (Excessive Force)

To succeed on a claim of use of excessive force, a pretrial detainee must prove that: (1) the defendant's use of force was used purposely or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472–73 (2015).

Here, the Court finds that, accepting the version of facts asserted by Plaintiff, (1) the facts show that Bissel's conduct violated a constitutional right and (2) the right was clearly established.

Defendants argue that Bissell used force under objectively reasonable conditions given Plaintiff's history of threats and violence, Plaintiff's failure to comply with the lock down order from multiple officers, and the fact that Plaintiff became physical with the officers, causing Bissell physical harm. But the Court finds that the alleged facts relied upon by Defendants are heavily disputed by Plaintiff. Under Plaintiff's version of the facts, Plaintiff was asking prison staff if he could go outside from a seated position and was attacked from behind by Bissell and two others. ECF No. 104 at 25–26. Plaintiff's version of the facts demonstrates purposeful and objectively unreasonable force. Both Plaintiff and Defendants present only testimonial evidence to characterize the details of this concededly violent incident.

Because the facts are contested, the Court accepts the version of facts asserted by Plaintiff to evaluate whether the constitutional right is clearly established. The Court finds that the law prohibiting the type of attack described by Plaintiff is clearly established, given that Plaintiff was allegedly sitting on the ground and presenting no physical threat. Young v. Cty. of Los Angeles, 655 F.3d 1156, 1163 (9th Cir. 2011) (finding "decisively" that an officer used excessive force where the plaintiff was sitting on the curb with his back turned to the officer when the officer began to pepper spray him, and holding that the "[t]he legal principles that dictate our conclusion that the force involved was excessive were clearly established and indeed, long-standing, prior to 2007"). The Court finds that there are genuine issues of disputed fact as to the claim and also qualified immunity. Therefore, the Court denies summary judgment as to Count VIII for excessive force.

### xi. Count IX

As above, prison officials may not impose punishment, including disciplinary segregation, on a pretrial detainee without a due process hearing. Mitchell, 75 F.3d at 524.

On September 8, 2016, Plaintiff was sentenced to 30 days of disciplinary segregation for charges related to the medications retrieved from other inmates on September 3, 2016. ECF No. 104, Exhibit B at 163; accord ECF No. 106, Exhibit B at 664. When Plaintiff complained, Gray responded: "After discussing your case with Sgt. Boruchowitz we have determined that since you were already on disciplinary lockdown you are not due the same due process and your latest

discipline for the medication stands." ECF No. 106, Exhibit B at 652. Defendants concede that Plaintiff was not afforded a hearing but argue that process was not required because Plaintiff was already in segregation, with seven days remaining on his previously-imposed sentence—a fact that is contested. As above, Plaintiff had a right to a due process hearing prior to the imposition of any punishment and it is uncontested that he did not receive one. It is beyond dispute that the additionally imposed days of segregation constitute punishment, and it is clearly established that punishment of pretrial detainees is constitutionally prohibited absent a hearing. Therefore, the Court denies qualified immunity and summary judgment as to Count IX.

### b. Plaintiff's Motion for Default and Cross Motion for Summary Judgment

Plaintiff seeks a default judgment against Boruchowitz. The Court does not find that a default judgment against Boruchowitz is appropriate. Boruchowitz filed an Answer on April 26, 2018. ECF No. 59. He has since participated in this suit by filing various joinders and responses. ECF Nos. 64, 69, 78, 86, 96, 101, 112, 119, 120. Boruchowitz has not "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Therefore, default judgment is not merited. To the extent Plaintiff also seeks summary judgment in his favor, Plaintiff makes no argument to that effect. The Court therefore denies Plaintiff's motion.

## IV. CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 103) is **GRANTED** as to Count II, Count V, and the deliberate indifference portion of Count VIII and otherwise DENIED. Plaintiff's claims for procedural due process (Count VII, against Defendants Means, Boruchowitz, Gray, and Wehrly, and Count IX, against Boruchowitz and Wehrly) and Plaintiff's claim for excessive force (the remaining portion of Count VIII, against Bissell) will proceed to trial.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default and Cross Motion for Summary Judgment (ECF No. 115) is **DENIED**.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Court reconsiders and grants Plaintiff's previous request for counsel. This case is referred to the pro bono project of this District for possible assignment of counsel.

**IT IS FURTHER ORDERED** that a status conference is set for **October 2, 2019** at 1:00 p.m.

**IT IS FURTHER ORDERED** that the Joint Pretrial Order in this case is due **September 27, 2019**.

DATED: July 28, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**